# In the United States Court of Appeals
## for the District of Columbia Circuit

———————

BARBARA J. LEE, et al.,
*Plaintiffs-Appellees*

v.

PRESIDENT DONALD J. TRUMP, et al.,
*Defendant-Appellants*

**On Appeal from the United States District Court
for the District of Columbia, 1:21-cv-00400-APM**

*Consolidated Member Cases: 21-cv-00586 (APM); 21-cv-00858 (APM); 21-cv-02265 (APM); 22-cv-00010 (APM); 22-cv-00011 (APM); 22-cv-00034 (APM); 23-cv-00038 (APM)*

———————

## PRESIDENT DONALD J. TRUMP'S EMERGENCY MOTION FOR A STAY PENDING APPEAL

———————

Joshua Halpern, Esq.
JH LEGAL PLLC
1100 H Street, NW, Suite 840
Washington, D.C. 20005
(610) 405-5531

Caryn G. Schechtman
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
(212) 335-4500

Jonathan M. Shaw
DHILLON LAW GROUP, INC.
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
(703) 574-1206

Jesse R. Binnall
Gerald A. Urbanek, Jr.
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943

*Counsel for Defendant-Appellant President Donald J. Trump*

INTRODUCTION.................................................................................1

RULE 8(a)(2)(A)(ii) STATEMENT..........................................................4

PROCEDURAL HISTORY AND STATEMENT OF THE CASE.............4

ARGUMENT .....................................................................................12

I.     A Complete Stay Is Required Because All Discovery Is
Intertwined with the Claims Against President Trump and
Would Burden His Immunity. ......................................................12

II.    The District Court's Carveout Misapplies the Governing
Principles and Cannot be Reconciled with the Record..................18

III.   The Discretionary Factors Independently Require a Complete
Stay.............................................................................................25

CONCLUSION AND PRAYER FOR RELIEF ......................................28

CERTIFICATE OF COMPLIANCE.....................................................31

CERTIFICATE OF SERVICE.............................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Ass'n of Realtors* v. *United States Dep't of Health & Hum. Servs.,*
539 F. Supp. 3d 211 (D.D.C. 2021) .................................................27

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................... *passim*

*Blassingame v. Trump,*
87 F.4th 1 (D.C. Cir. 2023) ........................................................ 13, 26

*Brassell v. City of Santa Rosa,*
2023 WL 171789 (D.N.M. Jan. 12, 2023) .........................................14

*Coinbase, Inc. v. Bielski,*
599 U.S. 736 (2023)..................................................................... 12, 18

*Griggs v. Provident Consumer Disc. Co.,*
459 U.S. 56 (1982)........................................................................ 12

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982)...................................................................... 13

*Loumiet v. United States,*
315 F. Supp. 3d 349 (D.D.C. 2018) ................................................14

*Nat'l Rifle Ass'n of Am. v. Vullo,*
2022 WL 152534 (N.D.N.Y. Jan. 18, 2022) .......................................14

*Nken v. Holder,*
556 U.S. 418 (2009).....................................................................25

*Population Inst. v. McPherson,*
797 F.2d 1062 (D.C. Cir. 1986).......................................................25

*Princz v. Fed. Republic of Germany,*
998 F.2d 1 (D.C. Cir. 1993)...........................................................12

*Serono Laboratories, Inc. v. Shalala*,
  158 F.3d 1313 (D.C. Cir. 1998) ........................................................ 25

*Smith v. Trump*,
  2023 WL 417952 (D.D.C. Jan. 26, 2023) ...................................... 8, 16

*Sosa v. Hames*,
  2006 WL 1284927 (S.D. Fla. May 3, 2006) ...................................... 14

*Thompson v. Trump*,
  590 F. Supp. 3d 46 (D.D.C. 2022) ................................... 7, 8, 16, 23

*Trump v. United States*,
  603 U.S. 593 (2024) ......................................................................... 26

*United States v. Philip Morris Inc.*,
  314 F.3d 612 (D.C. Cir. 2003) ........................................................ 26

*United States v. Trump*,
  706 F. Supp. 3d 91 (D.D.C. 2023) ................................................. 13

## Statutes

28 U.S.C. § 1292(b) ............................................................................ 8

28 U.S.C. § 2679 (Westfall Act) ..................................................... 8, 9

42 U.S.C. § 1985(1) .................................................................. *passim*

## Other Authorities

D.C. Circuit Local Rule 8 ............................................................... 1, 4

Fed. R. App. P. 8 ................................................................................ 1

# INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 8 and D.C. Circuit Rule 8, Defendant-Appellant President Donald J. Trump respectfully moves for an emergency order staying all proceedings in *Smith v. Trump* pending final resolution of his interlocutory appeal from the denial of official-acts immunity and requests an administrative stay pending resolution of this motion.

This appeal arises from eight consolidated civil cases seeking to wrongly hold President Trump liable for alleged injuries stemming from the events of January 6, 2021. In each, Plaintiffs' claims depend on the same incorrect theory: that President Trump's public statements, alleged communications, and alleged relationships with supporters made him responsible for the actions of others, including entry into the Capitol and disruption of Congress's electoral-vote certification.

President Trump moved for summary judgment on official-acts immunity. The district court largely denied that motion, and President Trump timely appealed. The appeal presents a threshold question: whether President Trump may be subjected to these suits at all. Because official-acts immunity protects against the burdens of litigation itself, the

1

appeal divests the district court of authority to proceed with litigation that would impose those burdens or develop the claims against him while the immunity question is pending.

The district court recognized that rule and applied it in nearly every consolidated case. It stayed all proceedings in the six cases where President Trump is the sole remaining defendant. It also stayed *Lee* in full, even though *Lee* includes codefendants, because discovery into those codefendants could not reasonably be disentangled from President Trump's asserted immunity from suit.

But the court wrongly treated *Smith* differently. It stayed only discovery directed to President Trump personally while erroneously permitting discovery and proceedings against codefendants and third parties to continue. That was error. At the center of *Smith* is a conspiracy claim wrongly alleging that President Trump agreed with virtually every named defendant and ten Doe defendants to violate 42 U.S.C. § 1985(1). The assault and battery claims incorrectly allege that other defendants acted at his direction, as his agents, or for his benefit. Discovery into the codefendants' communications, motives, conduct, relationships, and alleged coordination is therefore discovery into the claims against

2

President Trump, all of which must be stayed while this Court adjudicates his immunity appeal.

The burdens from the district court's erroneous decision are concrete and imminent. The *Smith* Plaintiffs anticipate roughly **100 depositions** and up to **600 hours of testimony**, along with written discovery, subpoenas, and privilege disputes. The court wrongly suggested that President Trump could protect himself by monitoring *Smith* discovery and seeking protective orders—but that is the burden immunity forbids, not a solution to it.

Nor will *Smith* discovery remain confined to that case. These cases arise from the same events, assert overlapping theories, and have been litigated in coordinated fashion. Plaintiffs in the stayed cases have every incentive to use *Smith* discovery to build the same President-centered evidentiary record the immunity stay is designed to prevent. The district court's *Smith* ruling is the prototypical exception that swallows the rule.

The district court got the governing rule regarding an immunity-based stay correct, and applied it properly in seven cases. But it erred badly by carving out *Smith*, where Plaintiffs are demanding hyper-broad discovery and the need for a complete stay is strongest. This Court should

stay *Smith* in full pending resolution of President Trump's immunity appeal.

RULE 8(a)(2)(A)(ii) STATEMENT

President Trump first sought this relief in the district court. Def. Trump's Joint Mot. to Stay Pending Appeal, ECF No. 226.[1] The court granted the motion in part and denied it in part, staying all proceedings in seven consolidated cases and staying discovery directed to President Trump in *Smith*, but permitting other *Smith* proceedings and discovery to continue. ECF No. 242 ("Stay Order") at 1–2, 6–10.

President Trump now seeks emergency relief from this Court. This motion asks the Court to stay all proceedings in *Smith* pending final resolution of the consolidated interlocutory appeals.

PROCEDURAL HISTORY AND STATEMENT OF THE CASE

These consolidated cases arise from the events of January 6, 2021. The district court consolidated eight civil cases for pretrial purposes: *Swalwell*, *Blassingame*, *Moore*, *Tabron*, *Kirkland*, *Garza*, *Lee*, and *Smith*. Across those cases, Plaintiffs seek to hold President Trump liable

---

[1] Unless otherwise specified, "ECF" refers to the docket in *Lee v. Trump*, No. 21-cv-400.

for alleged injuries arising from what they describe as a Capitol breach and subsequent disruption of the congressional certification—that is, the allegedly tortious acts of others.

Six cases—*Swalwell*, *Blassingame*, *Moore*, *Tabron*, *Kirkland*, and *Garza*—now proceed only against President Trump. Because he is the sole remaining defendant in those matters, any proceedings would impose litigation burdens on him and thus concern the conduct at issue in his immunity appeal. The court therefore stayed those six cases in full. Stay Order at 1–2.

The remaining two cases include codefendants. *Lee* asserts a single claim under 42 U.S.C. § 1985(1), alleging that President Trump, Rudolph Giuliani, the Proud Boys, and the Oath Keepers "conspired to incite an assembled crowd to march upon and enter the Capitol" to disrupt Congress's approval of the electoral vote count. Lee Am. Compl. ¶ 1, ECF No. 11.1. The court stayed *Lee* in full because discovery could not be reasonably disentangled from President Trump's asserted immunity from suit. Stay Order at 10–11.

*Smith* is the largest of the consolidated cases. The *Smith* Plaintiffs allege that President Trump and other defendants "incited violence

against members of Congress and the law enforcement officers whose job it was to protect them," that those efforts "culminated in the January 6 mass attack on the United States Capitol," and that "[a]ll Defendants are responsible for it." *Smith* ECF No. 89 (Am. Compl.) ¶ 2.

Count I asserts a § 1985(1) conspiracy claim. It alleges that "[r]esponding to [President] TRUMP's calls . . . other defendants planned and coordinated . . . [to] violently attack the United States Capitol." *Id.* ¶ 6. It also alleges that "[e]ach defendant" agreed to commit the predicate acts of § 1985(1), *id.* ¶ 168, and specifically that President Trump "agreed with" virtually every named defendant and ten unknown Doe defendants to violate the statute, *id.* ¶ 170(a). Thus, the alleged conduct of all other conspirators—for which plaintiffs seek to hold President Trump liable on the basis of his assertedly immune conduct—forms a key part of the claims against him.

The remaining claims in *Smith*—battery (Count IV) and assault (Count V)—are similarly pleaded to implicate the President. Count IV alleges that "Defendants and others intentionally and unlawfully attacked Plaintiffs at the Capitol on January 6, 2021," *id.* ¶ 200, that President Trump "aided and abetted the batteries . . . as part of an overall

illegal or tortious activity," *id.* ¶ 201, and that he is "vicariously liable" for the acts of his alleged agents, *id.* ¶ 202. Count V repeats the same theory for assault. *Id.* ¶¶ 206–08. Both counts rest on the allegation that "the attackers (including many Defendants) made clear that they were acting at [President Trump's] direction," *id.* ¶ 142, and both seek to impose vicarious liability on President Trump for the conduct of others. All of these allegations are false and President Trump has denied them.

The district court has wrongly allowed these theories to proceed based on alleged links among President Trump, the organized groups, and other January 6 actors. In *Thompson* v. *Trump*, the court held, in error, that Plaintiffs plausibly alleged a § 1985(1) conspiracy involving President Trump, the Proud Boys, the Oath Keepers, Tarrio, and others who entered the Capitol. 590 F. Supp. 3d 46, 101 (D.D.C. 2022). The court also held, again in error, that Plaintiffs plausibly alleged that President Trump was "of one mind with organized groups and others to participate in violent and unlawful acts to impede the Certification." *Id.* at 124. The court also asserted that alleged contacts involving Roger Stone and the Oath Keepers, while not necessary at the pleading stage, could become

important in discovery. *Id.* at 104–05. *See also Smith v. Trump*, 2023 WL 417952, at \*6 (D.D.C. Jan. 26, 2023) (applying same analysis).

On March 31, 2026, the district court issued a Memorandum Opinion largely denying President Trump's motion for summary judgment on official-acts immunity. Lee Mem. Op., ECF No. 219. The court wrongly held, while applying limited exceptions, that President Trump had not shown that the alleged conduct before and on January 6 fell within the scope of his official duties. *Id.* at 17–58. It also mistakenly rejected the United States' Westfall Act substitution for the District of Columbia law claims. *Id.* at 70–76. The court did rightly certify the President's First Amendment defense for interlocutory review under 28 U.S.C. § 1292(b). *Id.* at 69–70.

President Trump timely appealed the denial of official-acts immunity. Def. Trump's Notice of Appeal, ECF No. 220. The United States appealed the Westfall Act ruling. U.S. Notice of Appeal, ECF No. 224. This Court also granted President Trump permission to appeal the certified First Amendment question, *In Re: Donald Trump*, Case No. 26-8003, June 4 Order. President Trump then moved to stay all proceedings in the consolidated cases pending appellate review. Def. Trump's Joint

8

Mot. to Stay Pending Appeal, ECF No. 226; U.S. Mot. to Stay, ECF No. 229. Plaintiffs opposed any stay, including as to President Trump. Pls.' Opp'n to Defs.' Mots. to Stay Discovery Pending Appeal, ECF No. 232.

On June 4, 2026, the district court entered the Stay Order. The court rightly recognized that President Trump's immunity appeal divested it of control over the aspects of the case involved in the appeal, and that any proceeding imposing litigation burdens on President Trump had to be stayed. Stay Order at 4–5. It therefore stayed all proceedings in the six cases where President Trump is the sole remaining defendant. It also stayed discovery in *Lee*, recognizing that discovery against codefendants "cannot be reasonably disentangled from President Trump's asserted immunity from suit." *Id.* at 11; *see also id.* at 1–2, 10–11.

Inexplicably, the court treated *Smith* differently, staying only discovery directed to President Trump personally while permitting discovery nominally directed to codefendants and third parties. *Id.* at 2, 6–10. It permitted discovery into the very conduct for which the *Smith* plaintiffs seek to hold President Trump vicariously liable on the basis of actions he asserts are immune. That was error. Reasoning that "many

aspects of *Smith*" are not involved in the appeal, the court did not engage with Plaintiffs' pleadings, which place President Trump at the center of the case and seek to hold him liable for all of Defendants' conduct through conspiracy and aiding-and-abetting claims.

Instead, the court identified three curated examples in which it believed (erroneously) the President's interests would not be directly implicated: a privilege dispute between *Smith* Plaintiffs and the campaign Defendants (President Trump's 2020 Presidential Campaign); motions by Defendants Nordean and Biggs to lift defaults; and third-party discovery, including disputes with the National Archives over executive-privilege assertions. *Id.* at 6. On those limited examples, it erroneously declined to stay discovery in *Smith*, greenlighting Plaintiffs' hyper-broad discovery plans.

But the court's remaining findings undermined its carveout. It acknowledged that *Smith* discovery could burden the President, finding he may have to pay counsel to monitor discovery and seek protective orders. *Id.* at 8–9. It also recognized that the *Smith* Plaintiffs anticipate roughly 100 depositions and as much as 600 hours of testimony. *Id.* at 10. Yet it placed the burden on the President to have counsel monitor and

participate in that discovery to safeguard his interests, even though these are the litigation burdens that official acts immunity protects against. *Id.* at 9.

Immediately after the ruling, Plaintiffs in *Smith* proceeded as expected, seeking discovery bearing directly on President Trump. On May 29, 2026, they filed a Motion for Issuance of a Letter of Request to obtain Proton Mail records of non-party Roger Stone, expressly to "identify communication patterns, establish connections between relevant individuals, and corroborate timelines of coordination described in the Complaint." *Smith* ECF No. 502. Their search terms include eight variants of President Trump's name, including "Donald Trump," "Donald J. Trump," "Donald John Trump," "donaldtrump," "donald.trump," "dtrump," "djtrump," and "djt." *Id.* On June 5, Judge Mehta approved the request for issuance. *Smith* ECF No. 506. Discovery nominally aimed at a non-party email provider is thus designed to develop both the conspiracy allegations involving President Trump and the predicate conduct for which Plaintiffs seek to hold him vicariously liable. Such impermissible discovery will continue and compound unless this Court issues a stay.

# ARGUMENT

I.      **A Complete Stay Is Required Because All Discovery Is Intertwined with the Claims Against President Trump and Would Burden His Immunity.**

The governing principles require a complete stay. A notice of appeal is "an event of jurisdictional significance" that "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). When an interlocutory appeal presents the threshold question whether litigation may proceed at all, "the entire case is essentially involved in the appeal," and district-court proceedings must stop. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023) (quotations omitted).

Immunity appeals are the classic case for that rule. *Coinbase* explained that "in the analogous contexts of qualified immunity and double jeopardy," "district courts likewise must automatically stay their proceedings while the interlocutory appeal is ongoing." *Id.* at 742 & n.4. The D.C. Circuit has applied the same principle to immunity from suit. *See Princz v. Fed. Republic of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993) (treating an emergency motion for a stay of all district-court proceedings

as unnecessary because the immunity appeal automatically effected such a stay).

The reason for the rule is that immunity protects against the burdens of litigation itself. Official acts immunity is "entitlement not to stand trial or face the other burdens of litigation." *Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). That entitlement includes protection from discovery. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *United States v. Trump*, 706 F. Supp. 3d 91, 93 (D.D.C. 2023) (complete discovery stay pending immunity appeal).

These principles extend to codefendant discovery in conspiracy cases, because discovery into the conduct or state of mind of one codefendant bears upon the liability of the rest. For example, the Supreme Court in *Iqbal* rejected the argument that discovery could go forward against other defendants while the immune officials were protected from discovery directed at them. *Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009). Once discovery proceeds against others, immune defendants and their counsel must participate "to ensure the case does

not develop in a misleading or slanted way that causes prejudice to their position." *Id.* at 685. Thus, even if an immune defendant is not the express target of a discovery order, he "would not be free from the burdens of discovery." *Id.*; *see also Loumiet v. United States*, 315 F. Supp. 3d 349, 353 (D.D.C. 2018) ("The Supreme Court urges caution where discovery may entangle individuals potentially protected by qualified immunity."); *Nat'l Rifle Ass'n of Am. v. Vullo*, 2022 WL 152534, at *5 (N.D.N.Y. Jan. 18, 2022) (barring codefendant discovery in a conspiracy case because it would force the immune defendant "to participate to protect her rights").[2]

Here, the discovery erroneously permitted in *Smith* will burden President Trump because it is inextricably intertwined with—indeed, forms the predicate for—the claims against him. *Smith* pleads a President-centered conspiracy: Count I alleges that other defendants responded to President Trump's calls, planned and coordinated the

---

[2] *Accord, e.g., Brassell v. City of Santa Rosa*, 2023 WL 171789, at *2 (D.N.M. Jan. 12, 2023) ("[S]tandard practice in this District is to stay discovery—as to all defendants—when the defense of qualified immunity has been raised."); *Sosa v. Hames*, 2006 WL 1284927, at *1 (S.D. Fla. May 3, 2006) (staying entire case where claims on appeal "inextricably linked to the claims against" remaining defendants).

attack, and agreed with him to violate § 1985(1). *Smith* Am. Compl. ¶¶ 6, 168, 170(a). Discovery into any alleged coconspirator's communications, intent, coordination, or acts therefore bears directly on the alleged agreement with President Trump and on the predicate acts Plaintiffs will wrongly attribute to him.

The remaining assault and battery claims in *Smith* are equally intertwined with claims against the President. Counts IV and V allege that President Trump aided and abetted the assaults and batteries, that he is vicariously liable for the acts of alleged agents, and that the attackers made clear they were acting at his direction. *Id.* ¶¶ 142, 200–03, 206–09. Discovery into the codefendants' conduct, state of mind, communications, or relationship to President Trump is discovery into the elements and evidentiary foundation Plaintiffs will use to (wrongly) try to impose liability on him.

The district court's prior rulings in these cases show why no line can be drawn and thus all discovery must be stayed. The court let the conspiracy theory proceed because it believed, wrongly, that Plaintiffs plausibly alleged connections among President Trump, the Proud Boys, the Oath Keepers, Tarrio, and others who entered the Capitol.

*Thompson,* 590 F. Supp. 3d at 101. And it held that Plaintiffs need not prove a direct meeting or express agreement, because a tacit agreement would suffice. *Id.* at 101–02; *Smith*, 2023 WL 417952, at *6.

If tacit agreement can be inferred from the conduct, communications, or motives of others, then such evidence can be offered to suggest, erroneously, that President Trump tacitly conspired and is vicariously liable. Discovery about the codefendants is thus designed to build the case against the President, cannot be separated from his immunity appeal, and, therefore, the case must be stayed in full.

The burden on President Trump from *Smith* discovery will be massive. If it goes forward (it should not), the President must direct his counsel to participate to prevent Plaintiffs from developing a skewed record against him. Depositions present the clearest problem: Plaintiffs anticipate approximately 100 depositions, and questioning will probe the alleged conspiracy, coordination, direction, and agency relationships—all calculated to demonstrate the President's alleged liability. Document discovery will be similarly labor intensive. Because Plaintiffs have pleaded a conspiracy with the President at the center, all discovery is

necessarily trained at him, and counsel cannot protect his interest without staying engaged at every step.

This is the Catch-22 that *Iqbal* forbids. If President Trump participates, he bears the litigation burdens his immunity is meant to prevent. If he does not, he risks a record developed in his absence on the very claims against him—one that may be misleading, slanted, or prejudicial and used against him in the future. Either path inflicts the irreparable loss of immunity from litigation burdens before this Court decides whether those burdens may be imposed at all.

The consolidated structure of this litigation magnifies the harm. The member cases arise from the same events, rest on overlapping factual theories, and are prosecuted by coordinated Plaintiffs. Discovery taken in *Smith* will not remain in *Smith*. Plaintiffs in the stayed cases have every incentive to use *Smith* to try to buttress their own claims against President Trump. Indeed, they have already done exactly that across the consolidated litigation, and they have not been stopped by the district court. *See, e.g.,* ECF No. 174.1 pgs. 88–89, 101–02. Letting *Smith* discovery go forward would hand Plaintiffs the very thing the stay was

meant to prevent: a President-centered evidentiary record assembled while the immunity appeal is pending.

\* \* \*

*Smith* requires a complete stay. Allowing discovery in *Smith* would force the President into the Catch-22 of participating and surrendering the litigation-burden immunity he is appealing to protect, or standing aside while Plaintiffs develop a record against him. *Coinbase* and *Iqbal* forbid that result. Because *Smith* discovery concerns the aspects of the case involved in the appeal and would impose the burdens it is meant to suspend, the district court lacked authority to allow it. *Smith* must be stayed in full.

## II. The District Court's Carveout Misapplies the Governing Principles and Cannot be Reconciled with the Record.

The district court's *Smith* carveout rests on a single premise: that some discovery in *Smith* can be walled off from the claims against President Trump. That is wrong. The court reasoned that "many aspects of *Smith*" are not involved in the immunity appeal; identified three limited examples it believed could proceed; and suggested that President Trump could protect his interests by monitoring discovery and seeking protective orders. Stay Order at 6, 9.

18

Each step of that analysis is wrong. The court's premise cannot be squared with Plaintiffs' complaint, which wrongly places President Trump at the center of *Smith* and seeks to hold him liable through conspiracy, aiding-and-abetting, agency, and vicarious-liability theories for the conduct of others. None of the three curated examples show that even those limited aspects—much less the 100 depositions and other broad discovery Plaintiffs seek—can proceed without developing the claims against the President. And the court's proposed solution—requiring the President to monitor discovery and seek protective orders—imposes the very litigation burden immunity doctrine forbids. The only approach consistent with immunity from litigation burdens is a complete stay.

1. The threshold defect in the district court's analysis is that it did not begin with, or even consider, the allegations in the complaint in determining whether discovery could proceed without prejudice to the President. Stay Order at 5–9. Plaintiffs chose to plead *Smith* as a President-centered case. *See supra,* at 5–7. That choice matters: having alleged that President Trump is tied to the codefendants' conduct through conspiracy, aiding-and-abetting, agency, and vicarious-liability

19

theories, Plaintiffs cannot now proceed as though discovery into those same codefendants concerns discrete claims separable from the claims against the President.

**2.** The district court attempted to justify its carveout by identifying three examples of *Smith* proceedings it believed could proceed: a campaign-communications privilege dispute, motions by Defendants Nordean and Biggs to lift defaults, and third-party discovery including executive privilege disputes with the National Archives. Stay Order at 6. But those examples do not reflect the scope of the discovery allowed. The court did not authorize three narrow proceedings while otherwise maintaining the stay; it allowed Smith discovery to proceed broadly, including roughly 100 depositions. Stay Order at 9–10. In a complaint built on conspiracy, aiding-and-abetting, agency, and vicarious-liability theories, that discovery will necessarily probe the same conduct, communications, and motivations Plaintiffs allege connect President Trump to the other defendants. The limited examples therefore cannot justify the broad carveout.

Furthermore, none of the curated examples supports the court's conclusion that discovery may proceed:

*First*, the campaign-communications privilege dispute is central to Plaintiffs' theory of President Trump's liability. Plaintiffs allege that the Campaign Defendants were President Trump's agents and coconspirators, and that he is vicariously liable for their actions. *Smith* Am. Compl. ¶¶ 170(a), 202, 208. Discovery into campaign communications therefore reaches the alleged coordination, agency relationship, knowledge, direction, conduct, and intent that Plaintiffs will use to build their case against the President. A dispute over campaign communications cannot be treated as collateral when Plaintiffs' theory makes his campaign's conduct attributable to him.

*Second*, the motions by Nordean and Biggs to lift defaults do not support the carveout. Those motions are not discovery. At most, they show that some non-discovery activity in *Smith* might proceed without immediately imposing burdens on President Trump. But the order under review did much more: it permitted *Smith* discovery to proceed broadly against codefendants and third parties, including allowing Plaintiffs to take depositions and build an evidentiary record on the alleged conspiracy, agency, and aiding-and-abetting theories pleaded against President Trump. If resolving the default motions would expand or

reshape discovery—by adding participating defendants, creating new deposition rights, or altering discovery—that would only confirm the proceedings are intertwined with the claims against President Trump. Either way, the default motions do not justify the carveout.

*Third*, the district court's third-party-discovery example confirms the need for a stay. Discovery from the National Archives concerning executive privilege directly implicates presidential records, presidential communications, and presidential functions—subjects at the core of President Trump's official-acts immunity appeal.[3]

The district court's examples thus prove it is wrong: though it tried to excise narrow fragments of the docket, the discovery it allowed will develop the same conspiracy, agency, direction, and aiding-and-abetting allegations that place President Trump at the center of Smith, as well as the predicate acts for which Plaintiffs seek to hold him vicariously liable. A complete stay is required.

---

[3] Indeed, *Smith* discovery may also be directed toward President Trump's advisors, which will similarly implicate executive privilege and require the President to participate in the very discovery from which his immunity is meant to shield him.

**3.** The district court's proposed solution was for President Trump's counsel to monitor *Smith* discovery and seek protective orders when necessary. Stay Order at 9. That confirms the error in its analysis. The need to monitor discovery, assess privilege and immunity implications, object to improper questioning, and seek protective relief is itself a litigation burden—one involving potentially millions of dollars in attorney fees, given the scale of the discovery Plaintiffs seek—against which immunity from suit protects while the threshold question is pending on appeal.

Recent third-party discovery confirms the point. Plaintiffs' Proton Mail request concerning Roger Stone was formally directed to a non-party email provider and sought metadata, but Plaintiffs described its purpose as identifying communication patterns, connections, and timelines of coordination alleged in the complaint. Their search terms included multiple variants of President Trump's name. That request is designed to build the alleged connection between President Trump and other actors. The district court previously recognized that Stone's alleged connections to President Trump and organized groups could become important in discovery. *Thompson*, 590 F. Supp. 3d at 104–05. The court

cannot treat that same category of discovery as outside the immunity appeal.

The problem will recur throughout *Smith* discovery. The anticipated depositions will address the alleged conspiracy, coordination, direction, agency relationships, and predicate acts at the heart of Plaintiffs' claims against President Trump, and written discovery, subpoenas, document productions, and privilege and protective-order disputes will raise the same problem. In a case pleaded around President Trump's alleged relationship to the codefendants and the predicate conduct for which Plaintiffs allege he is vicariously liable, his counsel cannot know whether discovery threatens his immunity interests without following it.

Protective orders cannot solve the problem after the fact. No protective order can reliably separate testimony about a codefendant's conduct from testimony about President Trump's alleged role when Plaintiffs' false theory is that the codefendants acted in response to him, in agreement with him, at his direction, as his agents, or for his benefit. Nor, as *Iqbal* recognized, can President Trump safely wait until discovery has occurred to learn whether the record has been developed in a

misleading or prejudicial way. The court's approach thus requires the participation and expense that immunity is designed to prevent and that *Iqbal* rejected.

## III. The Discretionary Factors Independently Require a Complete Stay.

Even if a complete stay were not automatic, which it is, the discretionary factors independently compel one. The relevant factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The D.C. Circuit applies these factors "on a sliding scale," *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). A movant need not show certainty of success; "serious" and "substantial" legal questions may suffice. *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986). Each factor mandates a stay here.

*First*, President Trump's official-acts immunity appeal raises serious and substantial questions. The appeal concerns the scope of presidential immunity for alleged conduct involving public

communications, political speech, and asserted Article II functions. The Supreme Court has recognized that "most of a President's public communications are likely to fall comfortably within the outer perimeter of his official responsibilities." *Trump v. United States*, 603 U.S. 593, 629 (2024). Whether the district court correctly applied that principle here is a serious constitutional question warranting preservation of the status quo.

*Second*, absent a complete stay, President Trump will suffer irreparable harm. The harm is not merely the possibility of an adverse judgment. It is the loss of the immunity from "burdens of litigation." *Blassingame*, 87 F.4th at 29. Once President Trump must monitor discovery, pay counsel to protect his interests, attend to privilege disputes, evaluate deposition testimony, or seek protective relief, the immunity right has been compromised in a way no later appellate ruling can repair.

*Third*, Plaintiffs will not suffer substantial injury from a complete stay pending appeal. Delay alone is not substantial harm. *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003). Prejudice from delay is especially limited here because the events of January 6 have

already been the subject of an extensive public record, criminal prosecutions, congressional proceedings, and immunity discovery. The district court previously recognized that Plaintiffs' asserted prejudice from delay was substantially diminished by the extensive public record. *Smith* ECF No. 180 at 2. That record has only expanded.

*Fourth*, the public interest favors a stay. The public has an interest in resolving threshold presidential-immunity questions before a district court authorizes discovery that may impose burdens the immunity is designed to prevent. The public also has an interest in safeguarding the Presidency from unnecessary litigation burdens and in avoiding duplicative discovery that should prove irrelevant if President Trump prevails. Where litigation "presents questions of extraordinary public moment," that consideration supports preserving the status quo while appellate review proceeds. *Alabama Ass'n of Realtors* v. *United States Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 211, 218 (D.D.C. 2021) (quotation omitted).

The discretionary factors thus point in the same direction as the automatic-stay rule.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons above, President Donald J. Trump respectfully requests that this Court enter an order: (1) Staying all proceedings in the district court in *Smith v. Trump*, No. 21-cv-2265, pending final resolution of these consolidated appeals; and (2) Granting such other and further relief as the Court deems just and proper. In addition, President Trump requests an administrative stay pending resolution of this motion because discovery in *Smith* is ongoing and Plaintiffs have already served third-party discovery requests designed to develop the claims against him.

This relief is necessary to preserve President Trump's official-acts immunity, prevent the irreparable loss of that right through litigation burdens, and ensure these cases proceed only after this Court resolves the threshold immunity questions.

Dated: June 16, 2026

Respectfully submitted,

Joshua Halpern
(Member application pending)
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

/s/ Caryn G. Schechtman
Caryn G. Schechtman
Circuit Bar No. 67233
M. David Josefovits
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
Fax: (212) 335-4501
caryn.schechtman@us.dlapiper.com
david.josefovits@us.dlapiper.com

Aaron C. Ward
Circuit Bar No. 67170
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
Fax: (202) 799-5000
aaron.ward@us.dlapiper.com

Jonathan M. Shaw
Circuit Bar No. 56548
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206

Fax: (415) 520-6593
jshaw@dhillonlaw.com

Jesse R. Binnall
Circuit Bar No. 62429
Gerald A. Urbanek, Jr.
(Member application pending)
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
gerald@binnall.com


*Counsel for Defendant-Appellant*
*President Donald J. Trump*

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), undersigned counsel certifies that this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27(a)(2) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), it contains 5,196 words. Undersigned counsel certifies that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

/s/ *Caryn G. Schechtman*
Caryn G. Schechtman

*Counsel for Defendant-Appellant*
*President Donald J. Trump*

## CERTIFICATE OF SERVICE

I certify that on June 16, 2026, a copy of the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Caryn G. Schechtman*
Caryn G. Schechtman

*Counsel for Defendant-Appellant*
*President Donald J. Trump*