**Nos. 26-7052, 26-7049, 26-7123**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

BARBARA LEE, *et al.*,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, in his personal
capacity, *et al.*,

Defendants-Appellants

UNITED STATES OF AMERICA,

Movant-Appellant

On Appeal from the United States District Court
for the District of Columbia

## BRIEF OF THE UNITED STATES
## IN SUPPORT OF PRESIDENT TRUMP'S MOTION TO STAY
## DISCOVERY IN DISTRICT COURT

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
BRAD HINSHELWOOD
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A. Parties and Amici

This case is one of eight consolidated cases. *See Lee v. Trump*, No. 21-cv-400 (D.D.C.); *Swalwell v. Trump*, No. 21-cv-586 (D.D.C.); *Blassingame v. Trump*, No. 21-cv-858 (D.D.C.); *Smith v. Trump*, No. 21-cv-2265 (D.D.C.); *Moore v. Trump*, No. 22-cv-10 (D.D.C.); *Tabron v. Trump*, No. 22-cv-11 (D.D.C.); *Kirkland v. Trump*, No. 22-cv-34 (D.D.C.); *Garza v. Trump*, No. 23-cv-38 (D.D.C.). Plaintiffs in district court, and appellees in the consolidated cases, are Barbara J. Lee,  Bonnie Watson Coleman, Pramila Jayapal, Maxine Waters, Jerrold Nadler, Henry C. Johnson, Stephen I. Cohen, Veronica Escobar, Marcia Kaptur, Governor Latson, Danny McElroy, Melissa Marshall, Michael Fortune, Jason Deroche, Reginald Cleveland, Byron Evans, Conrad Smith, James Blassingame, Sidney Hemby, Marcus J. Moore, Bobby Tabron, Dedivine K. Carter, Briana Kirkland, Eric Swalwell, Sandra Garza.

Plaintiffs before the district court, but who were voluntarily dismissed from the case in district court include Bennie G. Thompson and Karen

Bass.

The defendants in the consolidated cases are Donald J. Trump, in his personal capacity, Proud Boys International, Zachary Rehl, Warboys LLC, Enrique Tarrio, Joseph R. Biggs, Ethan Nordean, Felipe Antonio Martinez Tony, Derek Kinnison, Stop the Steal, Ali Alexander, Brandon J. Straka, Roger J. Stone Jr., Charles Donohoe, Dominic J. Pezzola, Oath Keepers, Stewart Rhodes, Thomas E. Caldwell, George Pierre Tanios, Jessica Watkins, Kelly Meggs, Alan Hostetter, Erik Scott Warner, Russell Taylor, Ronald Mele, and Julian Elie Khater.

Previous defendants who have been dismissed from the case are Rudolph W. Guiliani and Representative Mo Brooks, in his personal capacity.

The United States of America sought to substitute itself as Defendant for Donald J. Trump, in his personal capacity, under the Westfall Act, 28 U.S.C. § 2679(d), and has appealed from the district court's denial of substitution in seven of the consolidated cases.

Amici curiae and putative amici curiae include Daniel J. Scavino Jr., Evan H. Caminker, Andrew Kent, Sheldon Nahmod, Daphna Renan, Peter M. Shane, Erwin Chemerinksy, Martha Minow, Laurence H. Tribe, Floyd Abrams, Jared Holt, Campaign Legal Center Action, and Reconstruction

Era Scholars. Non-party respondents in district court include Event Strategies Incorporated, Megan Powers, Office of the General Counsel for the House of Representatives.

## B.     Rulings under Review

The primary ruling under review in this appeal is the opinion and order entered in the consolidated cases on March 31, 2026. *See Lee et al. v. Trump, et al.*, No. 21-cv-0400 (D.D.C.), 2026 WL 880161 (Mehta, J.). This brief is filed in support of President Trump's motion (*Lee v. Trump*, No. 26-7052, Doc. #2179183 (D.C. Cir.)) to stay the June 4, 2026 order issued in these cases. *See Lee v. Trump*, No. 21-cv-400, Dkt. No. 242 (Mehta, J.).

## C.     Related Cases

The cases on review have previously been before this Court in appeals numbered 22-5069, 22-7030, 22-7031, and consolidated cases. The undersigned counsel is unaware of any related cases currently pending in any court other than the consolidated cases.

Respectfully submitted,

MARK R. FREEMAN
BRAD HINSHELWOOD
 *s/ Laura E. Myron*
LAURA E. MYRON
*Counsel for the United States*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND STATEMENT OF INTEREST.....................................1

STATEMENT ..................................................................................... 5

ARGUMENT ....................................................................................12

    I.     The President Is Entitled To A Full Stay Of Discovery
          Under *Coinbase* ........................................................................13

    II.    The President Will Suffer Irreparable Injury Absent A
          Stay Of Discovery Pending Appeal...............................................18

CONCLUSION ................................................................................. 23

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

| Cases: | Page(s) |
|---|---|

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................... 19, 20

*Blassingame v. Trump,*
87 F.4th 1 (D.C. Cir. 2023) ...........................................................6, 7, 10

*Coinbase Inc. v. Bielski,*
599 U.S. 736 (2023) ................................................2, 4, 13, 14, 15, 16, 17,

*Griggs v. Provident Consumer Discount Co.,*
459 U.S. 56 (1982)....................................................................... 4, 11, 13, 15

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ........................................................................17-18

*Mitchell v. Forsyth,*
472 U.S. 511 (1985)........................................................................10, 17, 19

*Nixon v. Fitzgerald,*
457 U.S. 731 (1982)........................................................................ 5

*Osborn v. Haley,*
549 U.S. 225 (2007) ........................................................................7, 17, 20

*Siegert v. Gilley,*
500 U.S. 226 (1991)........................................................................16

## Statutes:

9 U.S.C. § 16(a) ........................................................................15

28 U.S.C. § 1292(b)........................................................................ 9

28 U.S.C. § 2679(d) ........................................................................ 8

42 U.S.C. § 1985(1) ........................................................................ 6

**Rules:**

Fed. R. Evid. 801(d)(2)(E)......................................................................2, 16

**Other Authorities:**

Opinion, *Lee v. Trump*,
   No. 21-cv-400, Dkt. 242
   (D.D.C. June 4, 2026).................... 3, 4, 10, 11, 12, 13, 16, 17, 18, 20, 21, 22

Order, *Lee v. Trump*,
   No. 21-cv-400, Dkt. 219 (D.D.C. Mar. 31, 2026)........................................ 9

Order, *Smith v. Trump*,
   No. 21-cv-2265, Dkt. 180 (D.D.C. Jan. 26, 2023) .......................................7

Order, *Smith v. Trump*,
   No. 21-cv-2265, Dkt. 393 (D.D.C. May 13, 2025)................................... 8, 9

## INTRODUCTION AND STATEMENT OF INTEREST

The United States respectfully files this brief in support of President Trump's motion to stay all discovery in *Smith v. Trump*, No. 21-cv-2265 (D.D.C.), pending the Court's resolution of the President's appeal from the district court's denial of official acts immunity and the Government's appeal from the district court's denial of substitution under the Westfall Act, No. 26-7052 (and consolidated appeals).

Under settled principles, the President is entitled to a stay of all discovery while this Court considers whether President Trump is absolutely immune from plaintiffs' claims under the Constitution or the Westfall Act. Although their legal theories vary, plaintiffs in each of these eight consolidated cases seek to hold the President personally liable for the events of January 6, 2021. In some of the cases, the President is the only remaining defendant; in other cases, the plaintiffs have named as co-defendants various other persons alleged to have conspired with the President. The crux of each of these cases, however—and the essential premise of the entire litigation—is that the President should be personally liable for plaintiffs' alleged injuries.

Given that background, the district court correctly recognized that discovery could not go forward during these absolute-immunity appeals

as to the President himself without contravening the Supreme Court's decision in *Coinbase Inc. v. Bielski*, 599 U.S. 736 (2023), or denying the President the benefit of the immunities he asserts. Yet the district court mistakenly believed that it could allow plaintiffs to press forward with discovery as to the President's alleged co-conspirators in *Smith*.

Plaintiffs in *Smith*, however, no less than in the other seven cases, seek to hold the President personally liable. This is not a case where there are obviously separate claims against other defendants. Plaintiffs allege a wide-ranging hub-and-spoke conspiracy: the premise of the case, as outlined in their amended complaint, is that President Trump conspired with each of the other defendants to engage in conduct for which he should be liable. *See* First Am. Compl., *Smith*, 21-cv-02265, Dkt. 89, at 67-69 (D.D.C. Dec. 3, 2021). It therefore makes no sense to say that the President's interests are not implicated because plaintiffs only seek to examine the actions and statements of his alleged co-conspirators. *Cf., e.g.,* Fed. R. Evid. 801(d)(2)(E) (conspiracy exception to hearsay rules). Plaintiffs presumably pleaded their case as a conspiracy precisely so that they could link those actions and statements to the President.

Moreover, the staggering scope of the proposed discovery

underscores that plaintiffs intend to go on a fishing expedition to build a record against President Trump.  Plaintiffs in *Smith* "anticipate needing to take approximately 100 depositions" and "up to 600 hours of deposition testimony." Jt. Disc. Plan, *Lee v. Trump*, No. 21-cv-00400, Dkt. 230, at 4 (D.D.C. May 1, 2026).  And plaintiffs have not been abashed about directly targeting the President's interests:  they specifically seek to depose the President's former Chief of Staff, his daughter, and his son-in-law.  The district court has thus authorized the *Smith* plaintiffs to build an adverse factual record, potentially attributable to the President as a matter of conspiracy law, even as this Court considers whether the President may be a defendant in this case at all.

In response to President Trump's objections, the district court observed that "nothing prevents President Trump from seeking a protective order if he believes his substantial rights would be impaired by any particular deposition," and it offered that if the case is remanded, "President Trump would have the right to reopen any previously taken deposition." *Lee v. Trump*, No. 21-cv-400, Dkt. 242, at 9 (D.D.C. June 4, 2026) (opinion on stay of discovery motions).  But those meager assurances give away the game, particularly in light of the scale of

discovery.  Even attempting to figure out what may or may not be prejudicial out of nearly 100 depositions under the procedure the district court proposed would be tremendously burdensome and time-consuming.  The district court's order thus saddles the President with exactly the sort of litigation burdens that immunity protects against.

This Court should therefore grant the President's motion for a stay of all discovery pending appeal, for two reasons.  First, under the Supreme Court's decision in *Coinbase*, a stay of discovery is required in these circumstances because "the entire case is essentially 'involved in the appeal.'" 599 U.S. at 741 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 59 (1982)).  Indeed, in holding that a stay of discovery was required in the arbitration context, the Supreme Court in *Coinbase* reasoned by analogy to immunity cases like this one.  Second, as a practical matter, permitting discovery to continue against the President's co-defendants in these circumstances irreparably harms the President by denying him the benefit of his absolute immunity from the burdens of litigation—including the burden of having to "seek[] a protective order if he believes his substantial rights would be impaired," *Lee,* No. 21-cv-400, Dkt. 242, at 8, as the district court invited him to do.

The United States has a strong interest in this Court's resolution of

this question.  The Department of Justice represents the interests of the Office of the President and has an obvious interest in ensuring that a President's constitutional immunity under *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), cannot be circumvented by the simple expedient of seeking discovery from alleged co-conspirators.  In addition, the United States has certified that President Trump was acting within the scope of his employment as President when he took the actions challenged by plaintiffs in these cases, including in *Smith*.  The United States has appealed the district court's decision striking the government's notice of substitution under the Westfall Act.  The purpose of the Westfall Act is to grant absolute immunity from the burdens of litigation and trial to federal employees who are sued for acts taken within the scope of their federal jobs.  Because the district court imperiled that immunity—as well as the President's constitutional immunity under *Nixon*—by permitting discovery to proceed, the Court should grant the President's motion for a stay of discovery pending appeal.

## STATEMENT

This case is one of eight consolidated cases in which members of Congress and U.S. Capitol Police Officers have brought civil damages claims against, among other defendants, President Donald Trump, for

injuries arising out of the events of January 6, 2021.[1]  In each case,

plaintiffs sued the President in his individual capacity under 42 U.S.C.

§ 1985(1), accusing him of conspiring with others to prevent Congress

from certifying the 2020 presidential election.  In six of the other seven

cases, President Trump is the only remaining defendant (aside from the

United States, which has sought to be substituted under the Westfall

Act).  In this case (*Smith*) and one additional case (*Lee*), the remaining

defendants include the Trump Campaign, various campaign officials,

and private individuals and entities alleged to be involved in a putative

conspiracy helmed by President Trump.

These cases have previously been before this Court once already,

following a motion to dismiss by President Trump on grounds of

absolute immunity.  The district court denied the motion, and this Court

affirmed.  *See Blassingame v. Trump*, 87 F.4th 1, 5 (D.C. Cir. 2023).

Accepting plaintiffs' factual allegations as true, the panel reasoned,

President Trump had not "demonstrated an entitlement to dismissal of

---

[1] *Lee v. Trump*, No. 21-cv-00400 (D.D.C.); *Smith v. Trump*, No. 21-cv-02265 (D.D.C.); *Swalwell v. Trump*, No. 21-cv-00586 (D.D.C.); *Blassingame v. Trump*, No. 21-cv-00858 (D.D.C); *Moore v. Trump*, No. 22-cv-00010 (D.D.C.); *Kirkland v. Trump*, No. 22-cv-00034 (D.D.C.); *Tabron v. Trump*, Case No. 22-cv-00011 (D.D.C.); *Garza v. Trump*, No. 23-cv-00038 (D.D.C.).

the claims against him based on a President's official-acts immunity."
*Id.* at 5. This Court remanded for the President to "introduce his own facts pertaining to [the immunity question]" and to develop the argument that the speech on which plaintiffs' base their theory of liability was given as a public office holder rather than as a candidate for public office. *See id.* at 29.

While the prior appeal was pending, in January 2023, the district court ordered a stay of discovery as to President Trump in all eight cases, noting that "permitting discovery . . . while the question of absolute immunity remains unresolved is inconsistent with the broad and protective purposes of official acts immunity." *Smith v. Trump*, No. 21-cv-2265 Dkt. 180, at 2 (D.D.C. Jan. 26, 2023). Any prejudice to plaintiffs from a stay, the district court said, was "diminished by the extensive public record that already has been compiled about the President's actions before and on January 6th." *Id.* The district court did, however, permit merits discovery to commence against other defendants in *Smith*. *Id.*

In January 2025, shortly after his second inauguration, President Trump moved for summary judgment in all eight cases based on his constitutional immunity for official acts and for reconsideration of the

district court's denial of his earlier motion to dismiss on First Amendment grounds. *See, e.g.*, *Lee v. Trump*, No. 21-cv-400, Dkt. 144, 145 (D.D.C. Jan. 24, 2025). In March 2025, the United States certified under the Westfall Act, 28 U.S.C. § 2679(d), that President Trump was acting in the scope of his employment as President and sought to substitute the United States for the President as to the state-law claims in seven of the eight cases: *Blassingame*, *Swalwell*, *Smith*, *Moore*, *Tabron*, *Kirkland*, and *Garza*. *See e.g.*, *Smith*, No. 21-cv-2265, Dkt. 376 (D.D.C. Mar. 20, 2025). By virtue of the Westfall Act notices, "[t]he United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn v. Haley*, 549 U.S. 225, 231 (2007).

In May 2025, the district court stayed all depositions or further discovery against the United States pending the resolution of a motion by plaintiffs to strike the Westfall Act certifications and the President's pending summary judgment and reconsideration motions. *See Smith*, No. 21-cv-2265, Dkt. 393 (D.D.C. May 13, 2025). Thus, the only discovery permitted at that juncture in this case was (1) document discovery against defendants other than the President or the

8

Government, (2) non-party discovery under Rule 45, and (3) the completion of outstanding document subpoenas already issued to the Government. *See id.*

In March 2026, the district court issued the decision at issue in these consolidated appeals. The court granted plaintiffs' motion to strike the Westfall Act certifications; largely denied the President's motion for summary judgment as to official-act immunity; and denied in full his motion to reconsider the First Amendment ruling. *See Lee*, 21-cv-400, Dkt. 219 (D.D.C. Mar. 31, 2026). Both President Trump and the United States have filed interlocutory appeals from that opinion and order. The President appealed the district court's denial of presidential immunity, and the United States appealed the court's Westfall Act ruling. *Smith*, No. 21-cv-2265, Dkt. 220 & 224 (D.D.C. Apr. 10, 2026). Under 28 U.S.C. § 1292(b), the district court certified its ruling on President Trump's First Amendment defense as appropriate for interlocutory appeal, and the President filed a petition in this Court for permission to appeal the certified question. This Court granted the petition. *In re Trump*, No. 26-8003 (D.C. Cir. June 4, 2026) (consolidated as No. 26-7123).

Following that ruling, the district court indicated that it intended

to resume merits discovery.  The United States and the President sought a stay of discovery during the pendency of the appeals on official-acts immunity and Westfall Act certification.  *See, e.g.*, *Smith v. Trump*, No. 21-cv-2265, Dkt. 493 (D.D.C. May 1, 2026).

On June 4, 2026, the district court granted the request to stay all proceedings in all cases except *Smith*.  *See Lee*, No. 21-cv-400, Dkt. 242. The district court recognized that, "because official-acts immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' . . . in those cases in which [the President] is the sole defendant, the court must stay the proceedings in their entirety while he attempts to vindicate that right on appeal."  *Id.* at 3 (quoting *Blassingame*, 87 F.4th at 29).  "To do otherwise," the court explained "would mean the immunity from suit 'is effectively lost if a case is erroneously permitted to go to trial' or, as more pertinent here, wrongly allowed to continue with pretrial matters."  *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In *Smith*, however, the court stayed discovery only as to President Trump, while permitting other discovery to continue.  *Lee*, No. 21-cv-400, Dkt. 242, at 2, 5-6.  As to the President, the court again concluded that "[m]erits discovery as to him would involve aspects of the case involved in the appeal," *id.* at 5 (quotation marks omitted), and thus, the jurisdictional

principle recognized in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), "mandates a stay of discovery as to [the President,]" *Lee*, No. 21-cv-400, Dkt. 242 at 6.

But as to the President's co-defendants in *Smith*, the court concluded a stay was not required. In the court's view, the portions of the case involving the co-defendants were "readily segregable" from the issues on appeal. *Lee*, No. 21-cv-400, Dkt. 242, at 6. The court observed that merits discovery had been proceeding against the President's alleged co-conspirators in *Smith* since January 2023. *Id*. at 4. The court acknowledged that, "[t]o be fair, the discovery to date has been mostly written and thus rarely directly objectionable by [the President]." *Id*. at 8. But the court reasoned that "nothing prevents President Trump from seeking a protective order if he believes his substantial rights would be impaired by any particular deposition." *Id*. at 8-9.

Finally, the district court addressed the United States' motion to stay discovery, denying it as to the defendants in *Smith*, "for the same reasons articulated above" and because "the United States cannot establish irreparable harm." *Lee*, No. 21-cv-400, Dkt. 242, at 11. The court reasoned that, if the United States prevails on appeal, it will not be prejudiced by the ongoing discovery "because no Plaintiff has filed the required notice under

11

the Federal Tort Claims Act," so the suit would be dismissed.  *Id.* at 12.

Accordingly, "under either outcome on appeal, the United States will not

take discovery as a party in *Smith*," so "it cannot be irreparably harmed

absent a stay."  *Id.*

## ARGUMENT

The district court correctly recognized that, under well-settled

principles, a full stay of discovery was necessary in seven of these eight

consolidated cases, and that no discovery in any case could proceed

directly against President Trump during the pendency of these appeals.

Yet the court believed it could allow discovery to proceed against

President Trump's co-defendants in *Smith*—his alleged co-conspirators.

On that basis, the *Smith* plaintiffs are now preparing to depose the

President's former Chief of Staff, his daughter, and his son-in-law about

the events of January 6, 2021, all while these absolute-immunity appeals

are pending.  And that is just the beginning, as the plaintiffs seek

approximately "100 depositions" and "up to 600 hours of deposition

testimony" from the President's putative co-conspirators in *Smith*.  *See*

Jt. Disc. Plan, *Lee v. Trump*, No. 21-cv-00400, Dkt. 230, at 4 (D.D.C.

May 1, 2026).  In the district court's view, however, that is

unremarkable, because "nothing prevents President Trump from

seeking a protective order if he believes his substantial rights would be impaired by any particular deposition." *Lee*, No. 21-cv-400, Dkt. 242, at 8.

This Court's intervention is plainly warranted. The district court made two crucial errors. First, it misapplied the Supreme Court's decision in *Coinbase Inc. v. Bielski*, 599 U.S. 736 (2023), when it allowed discovery to proceed notwithstanding the pending absolute-immunity appeals in this Court. Second, the district court failed to recognize the irreparable harm that flows from requiring the President to shoulder, during these appeals, the enormous litigation burden of monitoring and potentially defending the approximately 100 depositions that plaintiffs propose to conduct in this conspiracy case—exactly the sort of harms that the President's constitutional and statutory absolute immunities are intended to prevent.

## I. The President Is Entitled To A Full Stay Of Discovery Under *Coinbase*.

The Supreme Court has repeatedly held that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs, v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). As the Court explained

in *Coinbase*, that principle necessitates a stay of ongoing district-court proceedings, including discovery, when "the entire case is essentially involved in the appeal." *Id.* at 741.

That is the case here. As the district court recognized, these interlocutory appeals concern whether the President has absolute immunity from plaintiffs' claims under the Constitution and the Westfall Act such that the cases against him cannot proceed. That is also the central question in this litigation. Although plaintiffs' theories of liability differ, the essential premise of each of these cases is that President Trump is personally liable—whether alone or in conspiracy with others—for the events of January 6, 2021. Every factual dispute in this case bears in some way on that essential premise. The *Smith* plaintiffs' proposal to depose the President's former Chief of staff, his daughter, and his son-in-law—nominally only in support of claims against the President's alleged co-conspirators—just lays bare what should be obvious from the conspiracy allegation itself: the whole case is about the President and his actions. *See generally* First Am. Compl., *Smith*, 21-cv-02265, Dkt. 89 (alleging an overarching hub-and-spoke conspiracy, with President Trump at its center).

In these circumstances, *Coinbase* requires a stay of discovery

pending appeal. The Supreme Court held in *Coinbase* that when a party files an interlocutory appeal over arbitrability pursuant to 9 U.S.C. § 16(a), the district court must stay all proceedings. "Because the question on appeal is whether the case belongs in arbitration or instead in the district court," the Supreme Court reasoned, "the entire case is essentially involved in the appeal." *Coinbase*, 599 U.S. at 741 (quoting *Griggs*, 459 U.S. at 59). In particular, the Court emphasized, "[i]f the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along." *Id.* at 743.

That logic applies with equal force in the absolute-immunity context. Because these cases are fundamentally about President Trump's alleged liability for January 6, the "entire case is essentially involved" in these immunity appeals. *Coinbase*, 599 U.S. at 741. *Coinbase* thus requires a stay of all discovery. Indeed, in holding that a stay of all district-court proceedings was mandatory, the Supreme Court drew on "the analogous contexts of qualified immunity and double

jeopardy," where the Court regarded it as well-established that district courts "must automatically stay their proceedings while the interlocutory appeal is ongoing." *Id.* at 742 & n.4. That analogy describes this case.

That conclusion is even more apparent in the context of a conspiracy case like *Smith*, where the knowledge, actions, and statements of one co-conspirator can potentially be attributed to or used against another. *E.g.*, Fed. R. Evid. 801(d)(2)(E) (conspiracy exception to hearsay rules). The district court was plainly wrong that claims against co-defendants are "readily segregable" from the issues on appeal. *Lee*, No. 21-cv-400, Dkt. 242, at 6. Plaintiffs allege a wide-ranging hub-and-spoke conspiracy theory: the premise of the case, as outlined in their amended complaint, is that President Trump conspired with each of the other defendants to engage in conduct for which he should be liable. *See* First Am. Compl., *Smith*, 21-cv-02265, Dkt. 89, at 67-69. It thus makes no sense to say that the President's interests are not implicated because plaintiffs only seek to examine the actions and statements of his alleged co-conspirators, particularly since the President is the alleged hub of the conspiracy. Plaintiffs presumably pleaded their case as a conspiracy precisely so that they could link those

actions and statements to the President.

It follows that "many of the asserted benefits" of the President's constitutional and statutory immunities "would be irretrievably lost" if discovery unfolded while these appeals are pending. *Coinbase*, 599 U.S. at 743. As noted, even the district court acknowledged that, under its ruling, the President may need to "seek[] a protective order if he believes his substantial rights would be impaired by any particular deposition." *Lee*, No. 21-cv-400, Dkt. 242 at 8. It is hard to imagine that the President would not feel compelled to seek such a protective order to block the deposition of his former Chief of Staff, his daughter, and his son-in-law (and perhaps even to appeal or seek mandamus in this Court if such an order were refused). Yet forcing the President to litigate such questions—or to track any of the other nearly "100 depositions" and "up to 600 hours of deposition testimony" that plaintiffs seek—would as a practical matter deny him the very immunity that is at issue in this Court. "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *see, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).

Likewise, the district court suggested that the President would "have the right to reopen any previously taken deposition" if the case were remanded. *Lee*, No. 21-cv-400, Dkt. 242, at 9. But it is entirely inconsistent with the Supreme Court's reasoning in *Coinbase* to suggest that discovery can proceed in district court as long as, after the appeal is done, the appellant has the ability to try to undo any damage his interests sustained in the interim. As discussed, these cases are all about the President's asserted liability, and the question whether the President can be a defendant in these cases at all is pending before this Court. Accordingly, under *Coinbase*, all discovery in district court must cease.

## II. The President Will Suffer Irreparable Injury Absent A Stay Of Discovery Pending Appeal.

Even apart from *Coinbase*, the President is entitled to a stay pending appeal on ordinary equitable principles. The district court believed that neither the President nor the United States would suffer any irreparable harm if discovery continued against the President's co-defendants. *Lee*, No. 21-cv-400, Dkt. 242, at 8-9, 11-12. But as already discussed, one of the basic purposes of the President's absolute immunity under *Nixon* is to relieve him of the burdens of civil litigation altogether. For this very reason, the Supreme Court has recognized that

18

the denial of an immunity defense is immediately appealable. "The entitlement is an *immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526 (emphasis in original). Likewise, the immunity conferred on a federal employee under the Westfall Act is an immunity "from suit," not just from liability. *Osborn v. Haley*, 549 U.S. 225, 238 (2007) (explaining that the Act is "designed to immunize covered federal employees not simply from liability, but from suit"). Those immunities are effectively lost if the President is compelled to defend against ongoing discovery while these appeals are pending, even if that discovery is nominally directed at his alleged co-conspirators rather than himself personally.

The Supreme Court recognized as much in *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009), when it explained that concerns about forgoing qualified immunity could not be addressed by deferring discovery against only some defendants during the pendency of an immunity appeal: "It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position." *Id.* Thus, the Court explained that "[e]ven if petitioners are not yet

themselves subject to discovery orders, then, they would not be free from the burdens of discovery." *Id*. at 685-86.

For the reasons already explained, it is hard to fathom how any significant discovery as to the President's putative co-conspirators could proceed in *Smith* without implicating the President's own liability and thus effectively requiring him to incur the burdens of civil litigation. In holding otherwise, the district court asserted that the *Smith* plaintiffs' "theory of conspiracy rests on few ties between President Trump and his alleged co-conspirators." *Lee*, No. 21-cv-400, Dkt. 242, at 9. But that contention is impossible to credit. As noted, every one of these cases asserts a conspiracy claim involving President Trump, and the central premise of all of these cases is that President Trump is personally liable for the events of January 6. The district court's belief that the *Smith* plaintiffs assert "few ties" to the President cannot be squared with their complaint, which alleges an overarching hub-and-spoke conspiracy with President Trump at its center. First Am. Compl., *Smith*, 21-cv-02265, Dkt. 89, at 67. It is also hard to square with their subsequent demand to depose the President's former Chief of Staff, his daughter, and his son-in-law. At a minimum, plaintiffs surely believe the "ties" they allege are sufficient to establish President Trump's participation in and civil

liability for the alleged conspiracy.  And no one familiar with conspiracy law could seriously contend that discovery against one alleged co-conspirator is irrelevant to the liability of the other alleged conspirators.

In sum, because these cases are entirely about President Trump's liability for the events of January 6—and particularly because plaintiffs seek to prove the existence of civil conspiracies with President Trump at their center—the discovery authorized by the district court will irreparably harm the President by denying him the benefit of the very immunities he has appealed to this Court to uphold.

In balancing the equities, the district court observed that plaintiffs had previously conducted discovery against the President's co-defendants in *Smith* between January 2023 and May 2025, without substantial objection from the President.  *Lee*, No. 21-cv-400, Dkt. 242, at 4.  But as the court itself acknowledged, "[t]o be fair, the discovery to date has been mostly written and thus rarely directly objectionable by [the President]." *Id.* at 8.  The wide-ranging and intrusive depositions that plaintiffs now seek to undertake are a different matter entirely.  A stay of that discovery is warranted while this Court considers whether the President can properly be made a defendant in these cases at all.

For similar reasons, the district court was wrong to conclude that

the United States would suffer no harm from allowing discovery to proceed in *Smith* as to the President's co-defendants. *See Lee*, No. 21-cv-400, Dkt. 242, at 11-12. The court reasoned that, if the United States prevails on appeal and is substituted for the President under the Westfall Act, the government will not be prejudiced by the ongoing discovery "because no Plaintiff has filed the required notice under the Federal Tort Claims Act," so the suit would have to be dismissed. *Id.* at 12. But the interests of the United States under the Westfall Act are not so limited. A key purpose of the Westfall Act is to grant federal employees who are sued for acts done in their federal jobs absolute immunity not just from civil liability, but from the burdens of civil litigation altogether. *Osborn*, 549 U.S. at 238. The United States has a strong interest in vindicating that congressional judgment, which applies at least as much, if not far more, to the President than to any other federal employee. For that reason, the United States respectfully urges the Court to grant the President's motion for a stay of all discovery pending appeal.

## CONCLUSION

This Court should grant the President's motion for a full stay of discovery in *Smith*.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
BRAD HINSHELWOOD
 *s/ Laura E. Myron*
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue*
*NW Washington, DC*
*20530*
  *(202) 305-1754*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,664 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

/s/ Laura E. Myron
Laura E. Myron